*200 * Johnson, Justice.
After the most careful examination of this voluminous record, I think it *due to the parties defendant, to express the opinion, that I cannot discover any evidence of fraud in any part of their transactions.
*201 *The proposed exchange between the Frederick and Fauquier lands, was made openly and deliberately, *upon consultation with friends of the cestuis que trust, and, obviously, had many prudential *considerations to recommend it. That Wormley and his family *202 must have starved, had they remained *upon the lands in Frederick, is abundantly proved; and no worse consequences could, have *happened to them, from either of these exchanges. It is satisfactorily shown also, that the exchange *for the Fauquier land *203 was highly advantageous. Taking money, as the most correct comparison of *value, it appears, that the Frederick land, after being long hawked about for sale, and having $1000 added to its value by Strode, in the extinction of the mother’s life-estate, sold for no more than *204 $5500, a sum satisfactorily proved to be its full value at the time ; whereas, the Fauquier land, after Wormley’s refusal to take it, was sold for $8000. So that the two tracts then stood, in comparison of value, as $4500 to $8000. And that Strode was fully sensible of the great difference in value, and satisfied to bear the loss, is positively proved, by the fact, that when Wormley reso^ve^ l-0 move to Kentucky, *they established the value of the Fauquier lands between themselves at $7000 ; and Strode actually gave an acknowledgment to Wormley for $6500, the balance of the $7000, after dividing with him the sum paid for his mother’s life-estate.
The case is one in which, it is true, the conduct of the defendants is greatly exposed to misrepresentation and misconstruction; but when reduced to order, and examined, the circumstances admit of the most perfect reconciliation with the purest intentions. It is true, that Strode was in debt; that it was necessary to sell the Fauquier lands, to satisfy his creditors ; that the money arising from the Frederick land was applied to the payment of Strode’s debts ; but there was nothing iniquitous in all this. It is perfectly explained thus : the Fauquier land must be sold to pay Strode’s debts; the situation of the Wormleys on the trust estate was so bad, that no change could make it worse ; the removal to the Fauquier lands was thought advisable by all their friends ; where then was the fraud in letting them have the Fauquier lands, at an under price, and paying his debts out of the actual proceeds of the trust estate ? The money arising from the latter was, under *205 this arrangement, the price of the former. It was, in fact, paying his debts with the price of his own property, not that of the trust estate.
It has been argued, that the sale of the trust estate was not made with a view to re-investment; but the evidence positively proves the contrary. It goes to show, that the re-investment was the leading object, and actually took place, previous to *the sale of the trust estate. And even if that construction of the power be conceded, which would require the sale and re-investment to be simultaneous acts, or that which would render the purchaser liable for the application of the purchase-money, the facts of the case would satisfy either exigency. For the re-investment was actually made simultaneously with the sale ; or, if it was not finally consummated, the cause is to be found altogether in the anxiety of the defendants to satisfy a capricious man, and the ignorance of Strode in supposing himself justified in yielding to Wormley’s judgment or will.
Had Strode actually sold the Fauquier lands ; paid off his incumbrances from the purchase-money; then sold the Frederick land ; and re-invested the fund in a re-purchase of the Fauquier lands, there could not have been an exception taken to the sufficiency of the re-investment. And then the transaction would, in a moral point of view, have been necessarily regarded as favorably as I am disposed to regard it. Tet, it is unquestionable, that, thus stated, it presents a correct summary of the whole transaction, as made out in the evidence. It has, however, been put together so as to admit of distorted views ; and such will ever be the case, where men expose themselves to suspicion, by mixing up their own interests with the interests of others placed under their protection. I can see nothing but liberality in the conduct of Strode towards Wormley, and little else than improvidence, caprice and ingratitude in the conduct of the latter.
*Nevertheless, there are canons of the court of equity which have their foundation, not in the actual commission of fraud, but in that hallowed orison, “lead us not into temptation.” One of these is, that a trustee shall not be permitted to mix up his own affairs with those of the cestui que trust. Those who have examined the workings of the human heart, well know, that in such cases, the party most likely to be imposed upon is the actor himself, if honest; and, if otherwise, that the scope for imposition given to human ingenuity, will enable it generally to baffle the utmost subtlety of legal investigation. Hence, the fairness or unfairness of the transaction, or the comparison of price and value, is not suffered to enter into the consideration of the court, on these occurrences ; but the rule is positive and general, that the cestui que trust may be restored to his original rights against the trustee, at his option. And where infants, &c., are interested, they will be restored or not, with a view solely to the benefit of the cestuis que tmst. It is unquestinable, from the evidence, that both Yeitch, and Castleman and McCormick, must be affected by both legal and actual notice of the transactions of Strode. They are, therefore, liable to the same decree which ought to be made against the latter.
It is, however, some satisfaction to me, to be able to vindicate their innocence, while I feel myself compelled to subject them to a serious loss. The rule which requires this adjudication, may, in many cases, be a hard one, but it is a fixed rule, and has the sanction of public policy.
Decree affirmed, with costs.